UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

WHITMAN COIN & JEWELRY INC. and                        **COMPLAINT**
DAVID GORDON,

                                              Plaintiffs      **Jury Trial Demanded**

    - against -

THE COUNTY OF SUFFOLK,

                                              Defendant.
-----------------------------------------------------------------------X

    Plaintiffs, WHITMAN COIN & JEWELRY INC. and DAVID GORDON, by and

through their attorneys, CAMPANELLI & ASSOCIATES, P.C., respectfully allege as follows:

## I.     Nature of This Action

    1.     The plaintiffs (collectively referred to herein below as "the plaintiff") bring this

case seeking an Order directing the defendant to return personal property which the Suffolk

County Police Department (SCPD) seized from the plaintiff, a declaratory judgment, injunctive

relief, compensatory damages, and costs and attorneys fees, pursuant to 42 U.S.C. §§1983 and

§1988, and 28 U.S.C. §2201, for deprivation of plaintiff's rights, which are secured by the

Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

    2.     At all relevant times described herein, the plaintiff, WHITMAN COIN &

JEWELRY INC., was a closely-held corporation owned by plaintiff DAVID GORDON (a

licensed Precious Metals Dealer). The corporation owned and operated a jewelry store located in

the County of Suffolk, wherein it bought and sold jewelry, gold, diamonds, and other valuable

merchandise.

3.      For at least a decade, the SCPD has maintained policies, practices, and procedures under which detectives from the SCPD have been entering the plaintiff's store and making warrantless searches and warrantless seizures of the plaintiff's business records, jewelry, gold, and other valuable merchandise, under claims that the searches and seizures were being made as part of one or more investigations. Upon information and belief, detectives of the SCPD have continued to make warrantless seizures of property from Precious Metals Dealers through at least December 2021.

4.      At the time of each warrantless seizure, the seizing detective provided the plaintiff with a written receipt describing the merchandise that had been seized and the case number that the SCPD had assigned to the investigation for which the property was seized.

5.      Under the SCPD's policies and practices, however, throughout the entire time the SCPD has been seizing and retaining possession of the plaintiff's merchandise, the cumulative value of which exceeds thousands of dollars, the SCPD has maintained and continues to maintain, the position that the plaintiff is not entitled to any information about the status and/or conclusion of the investigation for which its merchandise was seized.

6.      Each and every time the plaintiff inquired, the detectives who seized such merchandise consistently and affirmatively advised the plaintiff that the investigations remained "ongoing" or "pending."

7.      Under their policies, practices, and procedures, both the SCPD and the Suffolk County District Attorney's Office additionally maintain the position that the plaintiff is also not entitled to any information about the existence or conclusion of any criminal proceeding within which the seized merchandise was needed as evidence, or was believed to constitute stolen property.

2

8.      Under the policies, practices, and procedures of the SCPD, the plaintiff's only recourse in seeking to retrieve its property or to obtain any information about the open or closed status of the investigation for which its property was seized or any criminal proceeding in which the property is needed as evidence, is to "wait" until it receives a "notice of release letter" from the SCPD, wherein the SCPD will advise the plaintiff that its property is now available for release to them.

9.      Annexed hereto as Exhibit "A" is a copy of an internet webpage, owned and maintained by the SCPD, wherein it sets forth the SCPD's policies pertaining to "OBTAINING THE RELEASE OF PROPERTY FROM THE PROPERTY SECTION."

10.     As set forth in those policies, unless and until a store owner from whom property has been seized receives a notice from the SCPD advising them that their property is "releasable," they cannot seek the release of their property unless they are: (a) a crime victim, (and under the SCPD policies, stores from whom the SCPD seized merchandise are not recognized as crime victims), (b) *arrestees* seeking the return of property seized as evidence, or (c) *arrestees* seeking the return of their personal property.

11.     Since, under the policies of the SCPD, the plaintiff does not fall within any of those exceptions, it is not entitled to seek the release of its property back to it unless and until it receives a release notice from the SCPD.

12.     Under New York State law, even if a municipal police department unlawfully seizes property, the plaintiff cannot commence an action to recover property seized by the defendant from the plaintiff as part of an investigation unless and until the investigation has

3

concluded, *See, e.g*., <u>Best Sound and Security Inc. v. New York City Police Department</u>, 16 A.D3d 528 (2d Dept. 2005),

13.     In a similar vein, under New York State law, the plaintiff cannot commence an action to recover property that was seized because it is needed as evidence in a criminal proceeding or it is believed to be stolen property unless and until the criminal case is concluded, including the expiration of the period for the commencement of any such criminal actions, and the expiration of the period for the pursuit of any criminal appeals. Still, the defendant refuses to disclose if any such criminal action has been commenced or has concluded.

14.     Even where criminal cases continue for as long as twenty-five (25) years, under New York law, a plaintiff's right to commence an action to recover their property, which police had seized in connection with that proceeding, does not accrue until such criminal case is concluded (25 years after the property had been seized). *See, e.g.,* <u>Warren v. City of Poughkeepsie</u>, 66 Misc.3d 538 (2019). *See also* <u>Polanco v. U.S. Drug Enforcement Administration</u>, 158 F.3d 647 (2d Cir. 1998) (plaintiffs can have eleven (11) years to make an application to recover property).

15.     To the extent that store owners demand information about their property directly or through an attorney without receiving a notice of release letter from the SCPD, the SCPD has consistently maintained the position that neither they nor their attorneys are entitled to any information about the property. *See* Exhibit "B" annexed hereto, which is a small sampling of internal SCPD records wherein the policy is stated and restated that upon receipt of a demand from a store's attorney for the return of the seized property or for information about the investigation for which it was seized, the SCPD's policy is that "neither the store owner nor their

4

attorney, are entitled to any such information." *See* Exhibit "B" – Entries dated 12/4/2018 – last three lines.

16.    To the extent that store owners have filed federal lawsuits in the Eastern District of New York to obtain such information, both the SCPD and the Suffolk County Attorney's Office have refused to release such information and released it only after not less than three (3) successive federal court orders were issued by a United States Magistrate Judge in the E.D.N.Y. directing them to release same, under threat of sanctions. *See* Paul Schultz et al. v. County of Suffolk, E.D.N.Y. Docket # 19-CV-00361, and Daniel Burlock et al. v. County of Suffolk, E.D.N.Y. Docket # 19-CV-04387.

17.    In October 2022, as a result of the Schultz and Burlock cases, the plaintiff learned that *unbeknownst* to those store owners from whom such property was seized, the SCPD has been:

      (a)    releasing much of the seized merchandise to third parties without any judicial determinations that the recipients possessed greater rights to possess such property than the stores from whom the SCPD had seized it;

      (b)    selling much of their seized merchandise at public auction and retaining the proceeds from same;

      (c)    sending some of their seized merchandise to the *Covanta* incinerator to be destroyed or to a landfill for disposal.

18.    Under the circumstances, and despite not having received any notice of release letter from the SCPD, on December 15, 2022, the plaintiff, by its attorney, served a demand upon

the SCPD for the return of its property and a demand for information regarding the status of the investigation for which the plaintiff's property had been seized. *See* Exhibit "X."

19.    To date, the SCPD has ignored the plaintiff's demand for the return of its property and for information regarding the status of the investigation for which it was seized.

20.    As a result, the plaintiff does not know if the SCPD still possesses the plaintiff's business records and merchandise, which the SCPD's detectives seized from the plaintiff, or whether the underlying investigations and criminal cases for which the plaintiff's records and property were seized have been concluded.

21.    By virtue of the foregoing, the plaintiff has been deprived of its records and valuable property without due process of law, violating its rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

22.    The plaintiff has commenced this action seeking (a) an order directing the defendant to return the property that the SCPD seized from the plaintiff without warrants if, and to the extent that, the underlying investigations and/or criminal proceedings have been concluded; (b) a declaratory judgment adjudging as unconstitutional, both: (i) the SCPD's policies and practices described herein above, and (ii) the provisions of the Suffolk County Code and procedure under which the SCPD claims to possess the authority to conduct such unconstitutional warrantless searches and seizures; (c) injunctive relief enjoining the defendant from permitting its agents to continue making warrantless seizures from the plaintiff and carrying out the procedures described herein; and (d) compensatory damages with interest, attorneys fees and costs, pursuant to 42 U.S.C. §1983 and §1988.

6

## II.    Jurisdiction and Venue

23.    Jurisdiction is conferred on this Court by 28 U.S.C. §§1343(a)(3) and §1343(a)(4), which provide for original jurisdiction in the Court for all suits brought pursuant to 42 U.S.C. §1983.

24.    Jurisdiction is conferred on this Court by 28 U.S.C. §1331 because the cause of action arises under the Constitution and laws of the United States.

25.    Venue lies in the Court pursuant to 28 U.S.C. §1391(b)(ii) in that Suffolk County is the underlying County for purposes of venue and where the vast majority of the events occurred.

## III.    The Parties

26.    At all relevant times described herein, plaintiff WHITMAN COIN & JEWELRY INC. was a domestic corporation duly organized under the laws of the State of New York, with a principal place of business situated at 552 Walt Whitman Road, Melville, in the County of Suffolk, State of New York.

27.    At all relevant times described herein, plaintiff DAVID GORDON was and remains the President of WHITMAN COIN & JEWELRY INC. and was, and remains, a licensed Precious Metals Dealer who possesses a precious metals dealer license which was duly issued to him by the defendant.

28.    Upon information and belief, the defendant, THE COUNTY OF SUFFOLK, is a municipal corporation organized and operating under New York State law, with a principal place of business situated at 100 Veterans Memorial Highway, Hauppauge, NY 11788.

29.    At all times described herein, the Suffolk County Police Department was, and remains, an agency of the defendant County of Suffolk.

7

### IV.    Preliminary Facts

### A.    Suffolk County Code Chapter 563

30.    On or about May 12, 2009, the County of Suffolk amended Chapter 563 of the Suffolk County Code to incorporate regulations to govern persons engaged in the business of the "sale, purchase or exchange of precious metals and/or gems or other objects of precious metals or gems," which thereby makes them a "Precious Metals and Gem Exchange Establishment" (a/k/a a "*Precious Metals Dealer*") under the Code. *See* Exhibit "C."

31.    In enacting such provisions, the County implemented a requirement that any persons engaged in business as a Precious Metals Dealer obtain and maintain a license from the County. *See* SCC §563-37.

32.    Furthermore, the County imposed additional statutory requirements upon Precious Metals Dealers, which included the following:

(a)    A requirement, pursuant to Suffolk County Code §563-41(A), that every licensed dealer not merely record every transaction of any item they purchase in conducting their business, but also: (i) a description of each item and its weight, (ii) the amount they paid for the item, (iii) the date of the purchase, (iv) the name, home address, date of birth, sex, color and description of clothing of the person who sold them the item, and their signature,

(b)    A requirement, pursuant to Suffolk County Code §563-43, that every licensed dealer provides a report, each and every day, to the Suffolk County Police Commissioner and/or the Suffolk County Chief of Police, containing all of the information set forth within subparagraph (a) immediately hereinabove.

33.    Acting under authority they claim to possess under Chapter 563, the SCPD created and, at all times described herein, maintained an "***Article Tracking System***" (***ATS***), which is a computer database owned and operated by the SCPD.

8

34.    At all times described herein, the SCPD required that, at the time of any purchase transaction, all Precious Metals Dealers must contemporaneously record all of their purchase transaction information directly into the ATS.

35.    Acting under authority they claim to possess under Chapter 563, detectives within the "***Property Recovery Section***" (***PRS***) of the SCPD have unlimited and unsupervised authority and discretion to search not only all of the records within the ATS but also to search any licensed Precious Metals Dealer's business records at any time and to make then a warrantless seizure of any of the Precious Metals Dealer's business records and store surveillance tapes, as well as any personal property and/or merchandise which is described within any of such records.

36.    Under the practices, policies, and procedures of the SCPD, there is no limit whatsoever upon the PRS's detectives' powers to search and seize records, property, and merchandise from Precious Metals Dealers.


**B.**    **Unconstitutional Searches and Seizures**

37.    The factual allegations set forth immediately herein below are taken directly from (a) Suffolk County Police Department records previously produced by the defendant County of Suffolk and (b) the sworn testimony of a Fed. R. Civ. P. 30(b)(6) witness, who was produced by the defendant, County of Suffolk, as the County's 30(b)(6) witness, to provide sworn testimony as to the policies, practices, and procedures of the Suffolk County Police Department, within the matters of Paul Schultz et al. v. County of Suffolk, under Docket # 19-CV-00361, and Daniel Burlock et al. v. County of Suffolk, under Docket # 19-CV-04387.

9

38      That 30(b)(6) witness was Detective James DeMarco, who was a detective employed in the SCPD Property Recovery Section, and a transcript of his sworn testimony is made part of this Complaint, as Exhibit "D" annexed hereto.

39.     For more than a decade, the Suffolk County Police Department maintained a department known as the "***Property Recovery Section***" (hereinafter "the ***PRS***").

40.     SCPD detectives within the PRS would "recover property" by routinely making warrantless seizures of valuable property from precious metals dealers, jewelry stores, pawnshops, and other businesses whenever they desired.

41.     No exigent circumstances necessitated these immediate, warrantless seizures.

42.     The detectives at the PRS never applied for any warrants because they were affirmatively "trained" by their supervisors that they "didn't need them." *See* Exhibit "D," page 29, line 4 through page 30, line 7.

43.     Under the policies, practices, and procedures of the SCPD, there were no minimum criteria required to be met (such as being possessed of probable cause to believe that the item was stolen property) before a detective in the PRS could seize the same without a warrant. *See* Exhibit "D" page 33, lines 14-21.

44.     Detectives at the PRS would make such warrantless seizures either (i) at the request of any police officer from the Suffolk County Police Department, Southampton Police Department, East Hampton Police Department, or Riverhead Police Department, or (ii) arbitrarily and at their own initiative.

**(i)     Warrantless Seizures Made Upon Simple Request**

45.     Under the policies, practices, and procedures of the SCPD, all that was needed for the PRS to make a warrantless seizure was a request from any police officer from any police department on Long Island that property be seized from an identified store.

46.     The request could be made via telephone, fax, or e-mail and not actually need to describe the property of which seizure was desired, but could be as simple as "Please go to Smith's jewelry store and seize everything that was sold to them by Billy Jones," or "Can you do your magic and retrieve these articles for me so I can let my victim identify them?"

47.     A small sampling of requests received by the PRS, upon which the PRS made their warrantless seizure of property, is annexed hereto as Exhibit "E."

48.     When making such warrantless seizures based solely upon a request received from another police officer, the detective of the PRS would record that a request they received was the basis for the seizure. A small sampling of SCPD records reflecting the same is annexed hereto as Exhibit "F."

49.     When such requests were made, the police officer making the request for the warrantless seizure was not required to allege, much less provide evidence that there existed probable cause to believe that the property for which seizure was requested was stolen property.

**(ii)     Arbitrary *Self-Initiated* Warrantless Seizures**

50.     In accord with the policies, practices, and procedures of the SCPD, in hundreds of cases, detectives in the PRS randomly searched ATS records and the business records of Precious Metals Dealers and would seize any *items* they arbitrarily deemed "*suspicious,*" or if they deemed *the person who sold the property* to be "*suspicious.*"

51.     By way of example, items would be deemed "suspicious," and PRS detectives would seize them without a warrant for no reason other than the person who had sold them to a Precious Metal Dealer had a prior criminal record.

52.     In hundreds of cases, items such as high school rings, college class rings, or engraved silverware would be deemed suspicious and would be seized for no reason other than the fact that it was engraved and the name of the person who ultimately sold it at some point in time did not match the name which was originally engraved on the item.

53.     Such engraved items were constantly seized without warrants, despite the fact that the detective who seized each respective item was not seizing such property in response to any report of any stolen item that matched the description of the property they were seizing.

54.     Despite the same, detectives of the PRS would make warrantless seizures of engraved items and then commence an investigation to see if they could find anyone who would claim that the item had been stolen from them.

55.      By way of example, Exhibit "G," annexed hereto, is a *Newsday* article about an engraved chalice that was seized from a pawn shop by SCPD detectives who were thereafter "trying to locate the owner" to "*determine whether [it was] stolen.*"

56.     Annexed hereto collectively as Exhibit "H" is a small sampling of SCPD records in cases where detectives of the PRS made warrantless seizures of items for no reason other than the fact that they were engraved and the name of the seller did not match the name which had been originally engraved on the item.

57.     Detectives of the SCPD have continued making such warrantless seizures from Precious Metal Dealers through at least December 2021. *See, e.g.,* Olivo v. County of Suffolk,

E.D.N.Y. Docket # 22-cv-0183, and the SPCD has continued to maintain these practices, policies, and procedures despite multiple lawsuits having been filed against the County as a result of the same, and for years after such lawsuits were already filed and remained pending. *See* Paul Schultz et al. v. County of Suffolk, E.D.N.Y. Docket # 19-CV-00361, and Daniel Burlock et al. v. County of Suffolk, E.D.N.Y. Docket # 19-CV-04387.

### C.    Unconstitutional Disposal of Improperly Seized Property

58.    Once a detective from the PRS made a warrantless seizure of property from a Precious Metals Dealer, the police officer who requested the warrantless seizure, or the detective from the PRS who made the seizure, would then unilaterally determine how and when the seized property would be disposed of.

59.    More specifically, the detective and the SCPD would dispose of such property by either (a) releasing it to a third party, (b) selling it at a public auction and keeping the proceeds from such sale, (c) sending it to the *Covanta* incinerator to be destroyed, or (d) retaining it indefinitely.

60.    To effectuate a release to a third party, the seizing detective from the PRS would simply choose to whom they "*felt comfortable*" releasing the property, and they would complete a "disposition order" directing the SCPD to release the property to that person whom the detective would then identify as "the claimant." *See* Exhibit D at page 106, lines 1-10.

61.    A small sampling of such disposition orders is annexed hereto as Exhibit "I."

62.    At all times described herein, and as has been testified by a 30(b)(6) witness previously produced by the defendant herein, the SCPD has no policy, practice, or procedure through which either the SCPD or the seizing detective could determine the identity of the proper

13

"claimant," - - that being a person who possesses the right of ownership, or right to possess such property which is, or was, superior to the right of ownership possessed by the business owner from whom the PRS detective had seized it.

63.    At no time prior to choosing whom to release such property did the detective from the PRS, the SCPD, or any agent or employee of the SCPD obtain any judicial determination in any criminal, civil, or other judicial proceeding wherein it was determined that the third person to whom the property was being released was the owner of such property, or had an ownership or possessory right to such property which was superior to the Precious Metals Dealer from whom it had been seized without a warrant.

64.    In cases where property was seized because it was needed as evidence in a criminal proceeding, the SCPD had no procedural requirement that the seized property be returned to the business owner from whom it was seized when the underlying criminal case was dismissed or never even commenced. *See* Exhibit "D," at page 56, line 2 through page 57, line 10.

65.    At no time prior to the release of such property to a third party or before it is sent to the incinerator did the detectives from the PRS, the SCPD, or any agent or employee of the SCPD provide the Precious Metals Dealer from whom the property was seized with any notice that their property was going to be released to a third party or destroyed, nor any opportunity to be heard and/or to object to the release or destruction of their property.

66.    If either: (a) the SCPD could not find any third person claiming to own or having a right to take possession of such property, or (b) the SCPD identified a "claimant" who thereafter advised the SCPD that the property did not belong to them, then the SCPD would simply sell the property at public auction, and retain the proceeds from such sale.

67. Annexed collectively hereto as Exhibits "J" and "K" are just a small sampling of SCPD records reflecting the SCPD's sales of merchandise that detectives of the PRS had seized from Precious Metals Dealers without warrants.

68. Exhibit "J" consists of SCPD Chain of Custody Reports, all dated 9/10/2020. In the second full paragraph, each Report identifies specific items of jewelry (which had been seized from a Precious Metals Dealer without a warrant) and indicates that "The current location of" each such item is "SOLD," meaning that the SCPD auctioned off the jewelry.

69. Exhibit "K" consists of a small sampling of Auction Lot Grouping Reports detailing the items of jewelry and the auction numbers for the auction at which they were sold and includes a small number of receipts signed by the buyers who purchased them from the SCPD at the public auction.

70. While the Chain of Custody Reports and Auction records annexed as Exhibits "J" and "K" only date up until 9/10/2020, upon information and belief, the SCPD continues selling jewelry and other valuables that it seized from Precious Metals Dealers through the present, with its most recent auction held on October 19, 2022. *See* Exhibit "L."

71. In other cases, property that detectives of the PRS had seized from Precious Metals Dealers without warrants was thereafter sent by the SCPD to the *Covanta* incinerator to be destroyed or a landfill for disposal.

72. This property included both jewelry and other valuables seized from the Precious Metals Dealers, as well as the Stores' original video surveillance tapes, which were recorded on DVDs.

73.     A small sampling from SCPD records evidencing the same is collectively annexed as Exhibit "M," which consists of SCPD Chain of Custody Reports. In the second full paragraph, the reports describe each respective item and how it was destroyed or disposed of by the SCPD.

### D.     Refusal To Disclose and Concealment of Information

74.     As has been, and is, publicly disclosed by the SCPD, under the policies, practices, and procedures of the SCPD, the only recourse available to persons seeking the return of property that has been seized from them by the SCPD for purposes of conducting an investigation, is to wait until they receive a letter from the Police Department notifying them that their property is "*releasable*." *See* Exhibit "A."

75.     The Suffolk County Police Department has also publicly disclosed that it only recognizes three (3) circumstances under which persons *who have not received release letters* from the Police Department *can seek the release of their seized property*.

76.     They are explicitly limited to (a) "Crime Victims," (b) Arrestees seeking the return of property that was seized as evidence, and (c) Arrestees seeking the return of their personal property (prisoner property). *See* Exhibit "A" annexed hereto, which is a true copy of a Suffolk County Police Department's internet website page that explains its procedure for obtaining the release of seized property. It explicitly identifies the only three (3) types of claimants permitted to seek the release of their seized property from the Police Department without receiving a release letter from the Department.

77.     But since the plaintiff and other Precious Metals Dealers do not fall within the list of claimants whom the SCPD "allows" to make demands for the return of their respective

property, the SCPD does not recognize the plaintiffs as persons who can demand information regarding the property which has been seized from them, or information about the investigations for which their property was seized.

78.     Each and every time the plaintiff inquired about the status of the litigation for which its property had been seized, the detectives who seized such merchandise consistently and affirmatively advised the plaintiff that the investigations remained "ongoing" or "pending."

79.     To the extent that the plaintiff and other Precious Metals Dealers attempted to obtain information about their property and the status of the investigations by contacting the Suffolk County Police Department directly, they were invariably and affirmatively told that they were, and are not entitled to any information.

80.     Upon information and belief, to the extent that Precious Metals Dealers attempted to obtain information about the status of the investigations and/or any related criminal proceeding by contacting the Suffolk County District Attorney's Office directly, they were invariably and affirmatively told that they are not entitled to any information.

81.     Upon information and belief, to the extent that Precious Metals Dealers learned of the existence of a pending criminal proceeding, wherein the property that had been seized from them was needed as evidence or was believed to constitute stolen property, the theft of which was the subject of the criminal proceedings, and they attempted to obtain information by physically going to the criminal court where the case was pending, the District Attorneys affirmatively told the Precious Metals Dealers that they have no right to any information about the pending criminal case, and were directed to "go home."

82.    To the extent that Precious Metals Dealers filed federal lawsuits to obtain such information, the defendant refused to disclose such information for years and ultimately disclosed the same only after a federal Judge in the E.D.N.Y. issued not less than (3) consecutive orders directing the disclosure of same, under threat of sanctions. *See* Paul Schultz et al. v. County of Suffolk, E.D.N.Y. Docket # 19-CV-00361, and Daniel Burlock et al. v. County of Suffolk, E.D.N.Y. Docket # 19-CV-04387.

83.    The policy which has been and continues to be maintained by the SCPD department is that Precious Metals Dealers from whom detectives of the PRS seized records and merchandise are not entitled to any information, whatsoever, regarding:

  (a)    the property which has been seized from them or what's happening to it,

  (b)    if the criminal or other investigation for which their property was seized is ongoing or has been concluded,

  (c)    if any underlying criminal proceeding within which it is alleged that the property seized from them is stolen property, or within which the property seized from them is needed as evidence, has been concluded, is ongoing, or was ever commenced.

84.    Annexed hereto as Exhibit "B" is a small sampling of records from the SCPD that articulate such policy and whose articulation of same is attributed to the same PRS detective (Detective DeMarco) who was produced as the 30(b)(6) witness whom the defendant County previously produced to testify as to the actual policies, practices, and procedures of the SCPD.

85.    In anticipation of litigation, the final decision-makers within the SCPD caused the creation of a false entry within hundreds of SPCD records, wherein they attribute a statement to Detective DeMarco as having suggested that business owners could obtain information via

service of a request under freedom of information law (FOIL), but Detective DeMarco testified

under oath that he never made any such statement regarding requests via FOIL.

*See* Exhibit "D," at page 60, lines 9-17.

### E.    A Microcosm of The Defendant's Unconstitutional Practices

86.    The defendant, the SCPD, and its detectives have maintained policies, practices,

and procedures that reflect utter contempt for store owners who are licensed Precious Metals

Dealers and intentional and deliberate indifference to the Constitutional rights of same.

87.    A perfect microcosm of the defendant's unconstitutional practices is a SCPD case

bearing SCPD CC# 14-444229. The facts and chronology of that case are as follows.

88.    On July 28, 2014, in case # 14-444229, a woman named Joan Fuhrmann contacted

the SCPD to advise them that her house had been burglarized.

89.    According to SCPD records, she explicitly reported to the SCPD that the property

stolen from her home consisted of "*approximately $240 and a coin collection*."

*See* SCPD Incident Report - Exhibit "N," at page 2, 3rd full paragraph.

90.    Based upon that complaint, a PRS detective searched the SCPD's ATS and did not

find any items that matched the description of the items that had been stolen from Ms. Fuhrmann.

However, the detective *did* find a silver platter that was engraved with the name "*William F.*

*Furhmann*." Exhibit "N" Page 2, 4th full paragraph.

91.    On December 12, 2014, despite the fact that the silver platter did not match the

description of any items that had been stolen from *Joan* Fuhrmann and the name engraved on the

silver platter wasn't hers, a detective from the PRS went to the Precious Metals Dealer who had

bought the silver platter and seized not only the platter but everything which the dealer had bought from the same person who had sold them the platter *See* Exhibit "N" Page 2, 6th full paragraph.

92.     This included eleven (11) small diamonds and jewelry, in addition to the silver platter, all of which were seized, without a warrant, "*as evidence for a burglary investigation.*" *See* Exhibit "O," a SCPD Property Section Property Sheet for CC# 14-444229.

93.     On January 20, 2014, after seizing such items without a warrant, the detective contacted Joan Fuhrmann and told her to come to the precinct to see the items. She went to the precinct, looked at the items, and advised the detective that they were not her property. *See* Exhibit "N" Page 2, 4th full paragraph.

94.     Having been explicitly advised that the seized property had not been stolen from her, the SCPD did not return it to the store from whom they seized it, but they proceeded to hold onto it for the next four (4) years, because the detective then marked the status of the investigation as "***Pending***." *See* Exhibit "N" - second page where the final entry into the Report states: *"Based upon the above facts, this case will be carried as pending. Status: Pending."*

95.     On January 17, 2018, a detective from the PRS completed a Disposition Order wherein he (a) directed the release of the seized property and (b) asserted that the "claimant" who was entitled to receive the property was "*unknown*," despite the fact that (c) in the very same order, he noted that the property had been seized "as evidence for burg invest" and explicitly named the store from whom it had been seized (Jempath). *See* the signed SCPD Disposition Order annexed as Exhibit "P."

96.    Two months later, on <u>March 28, 2018</u>, the SCPD sold the eleven (11) diamonds and jewelry, which had been seized from the store at a public auction, to one of the store's competitors. *See*

| | |
|---|---|
| Exhibit "Q" | Chain of Custody report, CC# 14-444229, first full paragraph, indicating that the current status of Item #3, "small diamonds," is "sold." |
| Exhibit "R" | SCPD Auction Lot Grouping Report referencing the sale of "Lot #171 Asst Jewelry & loose diamonds." |
| Exhibit "S" | SCPD Auction Sales Receipt for sale of "Asst jewelry and loose diamonds" to S&R Diamond Inc on 3/28/2018. |

97.    The store owner had no idea that the SCPD had sold the property it had seized from him because the SCPD had not provided him with notice that it would be sold, nor any opportunity to object to such property sale.

98.    On <u>November 14, 2018</u>, an attorney representing the store owner from whom the property had been seized served a letter upon the SCPD demanding the return of the property. *See* Exhibit "T."

99.    The letter included an itemized list of the items, the return of which was demanded, and that list explicitly included the silver platter, the eleven (11) small diamonds, and the jewelry. *See* Exhibit "U."

100.    On <u>November 20, 2018</u>, as reflected in many SCPD records, the SCPD received the letter and the itemized list from the store owner's attorney. *See* a small sampling of SCPD Note History Reports annexed hereto as Exhibit "V" at the third full paragraph of each.

101.    On <u>May 9, 2019</u>, *six months <u>after</u>* it received the attorney's demand for the return of the seized property, the SCPD sent the silver platter to the *Covanta* incinerator and had it destroyed. *See* Exhibit "W" SCPD Destroy Report, first line, item #15004647 "silver tray . . .Wm F. Furhmann."

**V.    The Defendant's Unconstitutional Practices are Applied Against<br>the Plaintiff, in Violation of the Plaintiff's Constitutional Rights**

102.    At all relevant times described herein, the plaintiff was licensed to operate, and did operate, a business as a Precious Metals Dealer within the County of Suffolk.

103.    The plaintiff was subjected to multiple unconstitutional warrantless searches and warrantless seizures by employees of the SCPD, wherein detectives of the SCPD entered the plaintiff's store, made warrantless searches and seizures of both (a) the plaintiff's business records and (b) valuable merchandise belonging to the plaintiff and/or in which the plaintiff held a possessory interest, with the most recent warrantless seizure having occurred in December 2021.

104.    At the time of each such seizure, the seizing detective advised the plaintiff that the seizure was made as part of an ongoing investigation being undertaken by the SCPD, and the detective provided the plaintiff with the "CC#" that the SCPD had assigned to the respective investigation.

105.    At the time of such respective seizures, the SCPD detectives gave the plaintiff simple receipts confirming each respective seizure, in writing, but did not provide the plaintiff with any notice or instructions, written or otherwise, as to any procedure or process by which the plaintiff could seek to reclaim or recover its property.

22

106.    On or about September 21, 2023, the plaintiff, through its attorney, made a written demand for the return of the seized property and a contemporaneous demand for information pertaining to any investigation and/or criminal proceeding pertaining to such property. A true copy of such demand is annexed hereto as Exhibit "X."

107.    To date, the defendant and the SCPD have wholly failed and/or refused to comply with such demand and failed and/or refused to return plaintiff's property to the plaintiff.

108.    To date, the defendant and the SCPD have contemporaneously failed and/or refused to disclose any information pertaining to any investigation or criminal proceeding within which it is alleged or asserted that the property seized from the plaintiff is stolen property or needed as evidence in any such investigation or criminal proceeding.

## COUNT I

**42 U.S.C. §1983 Action for Deprivation of Plaintiff's Rights
Under U.S. CONST. Fifth and Fourteenth Amendments
Procedural Due Process**

109.    The plaintiff repeats and reiterates the allegations set forth within paragraphs "1" through "108" hereinabove, with the same force and effect as if fully set forth at length herein.

110.    At all times described herein, the plaintiff was constitutionally protected against being deprived of its personal property without due process of law, under the Fifth and Fourteenth Amendments to the United States Constitution.

111.    Upon information and belief, the defendant, County of Suffolk, by its agents and employees, each of whom was acting under color of state law, deprived the plaintiff of its personal property described herein without having afforded the plaintiff due process by:

    (a)    seizing plaintiff's personal property, inclusive of the plaintiff's personal business records and valuable merchandise owned by the plaintiff, without warrants;

    (b)    releasing and/or transferring possession of the plaintiff's property to third parties without affording plaintiff notice or any opportunity to object to such release or to challenge any third party's claims to plaintiff's property;

    (c)    selling plaintiff's property at public auction;

    (d)    sending the plaintiff's property to the *Covanta* incinerator to be destroyed;

    (e)    retaining plaintiff's property indefinitely and/or permanently.

112.    In doing so, the defendant afforded the plaintiff no pre-deprivation or post deprivation process of any kind whatsoever.

113.    The defendant provided the plaintiff with no pre-seizure or post-seizure hearing or procedure through which the plaintiff could challenge:

    (a)    the SCPD's *initial warrantless seizure* of the plaintiff's property and temporary deprivation of same,

    (b)    the SCPD's *continued retention* of plaintiff's property, including in cases within which the SCPD's predicate for the initial seizure ended, such as when an underlying criminal proceeding was dismissed and/or terminated, or in cases within which an alleged victim explicitly told the SCPD that the seized property did not belong to them,

    (c)    the SCPD's *ultimate release* of plaintiff's property to a third party, sale at public auction, or other disposition of plaintiff's property.

## Monell Liability

114.    The defendant County is liable for the deprivations described herein above because the practices, policies, and procedures described herein were adopted, implemented, and/or maintained by the final decision makers for the defendant.

115.    By way of example, SCPD detectives never applied for warrants to seize thousands upon thousands of items, including from the plaintiff, because they were "trained" that "they didn't need them" by the highest-ranking supervisors in their department. *See* Exhibit "D" page 29, line 4 through page 31, line 9.

116.    At all times described herein, the SCPD had no procedure which required notice ever be provided to the store from which property was seized about what was happening to the property which the SCPD had seized from them. *See* Exhibit "D" page 60, lines 18-24.

117.    At all times described herein, the SCPD had no procedural requirement that before the seized property was disposed of by being released to a third party, sold to a third party at public auction, or sent to the *Covanta* incinerator to be destroyed, that the store from which it was seized was provided with notice and an opportunity to be heard before the property was disposed or destroyed. *See* Exhibit "D," at page 61, line 15 through page 62, line 11.

118.    At all times described herein, the SCPD had no procedural requirement, which required the SCPD, or any of its detectives or other employees to notify the persons from whom records and merchandise had been seized as part of an investigation that:

      (a)    the investigation for which the property was seized has now been concluded;

      (b)    any criminal proceeding within which the seized property was needed as

evidence, or was to be established as being stolen property, has been concluded, or would never actually be commenced;

(c)    the seized merchandise was now "releasable" to the store owner from whom it was seized or

(d)    the seized merchandise was going to be disposed of by the SCPD, either by release to a third party, sale at public auction, destruction at the Covanta incinerator, or sent to a landfill.

119.    The SCPD had no procedure to track when any criminal case, within which the seized property was needed as evidence, was concluded. *See* Exhibit "D," at page 64, lines 15-20.

120.    At all times described herein, the SCPD had no procedural requirement that if the underlying criminal case was dismissed, the seized property had to be returned to the store from which it was seized. *See* Exhibit "D," at page 56, line 2 through page 57, line 10.

121.    At all times described herein, the SCPD had no procedural requirement that before the seized property was released to a "claimant," that being a person other than the store owner from whom the SCPD had seized it, someone had to make a factual determination as to who the proper owner of the property was. *See* Exhibit "D," at page 65, lines 16-20.

123.    Defendant Suffolk knew or should have known that it was unlawful and unconstitutional to make warrantless seizures of personal property from the plaintiff and thereafter deny them possession of their property permanently without a modicum of due process.

124.    Defendant Suffolk knew or should have known that it was unlawful and unconstitutional to release plaintiff's property to third persons, sell it, and/or retain it indefinitely, all

without affording the plaintiff notice or any hearing or process through which the plaintiff could have objected to, or challenged, the validity of such deprivations.

125.    The failure by official Suffolk policymakers to create, implement, maintain, and afford notice of policies and procedures through which Precious Metals Dealers, inclusive of the plaintiff, (a) could seek the release of their personal property, (b) would be made aware of such procedures through which they could seek to recover same and (c) be afforded an opportunity to object to any unauthorized disposition of personal property, amounts to deliberate indifference to the rights of the plaintiff, as made clear by numerous controlling court decisions including McClendon v. Rosetti, 460 F.2d 111, (2d Cir. 1972); Butler v. Castro, 896 F.2d 698 (2d Cir. 1990); Alexandre v. Cortes, 140 F.2d 406 (2d Cir. 1998); Tammaro v. City of New York, 2018 U.S. Dist. LEXIS 54729; Krimstock v Kelly, 464 F.3d 246 (2d Cir. 2006).

126.    Contemporaneously, the failure by official Suffolk policymakers to properly train or supervise subordinates regarding the process due in conjunction with the seizure, detention, and disposal of personal property similarly amounts to deliberate indifference to the rights of persons and parties who own or have interests in personal property which is seized, detained, sold and/or disposed of by defendant Suffolk.

127.    But for Suffolk's failure to implement constitutionally required policies, practices, and procedures, and due to its failure to properly train and supervise its employees, the plaintiff would not have been deprived of its property in violation of its U.S Constitutional rights to due process and would have recovered same without delay or with minimal delay, by measures that would have preserved its legitimate interests.

128.    As for the policies, practices, and procedures that *were* carried out by the SCPD, it was virtually impossible for the final decision-makers of the County and/or the SCPD not to have known of their existence and application because those policies, i.e., conducting warrantless searches and seizures and refusing to disclose information about seized property to store owners, were carried out by more than one hundred and forty (140) detectives from the SCPD, in conducting the warrantless seizures of thousands, upon thousands, of items of jewelry, gold, silver, diamonds, and other valuable property, and the practices described herein continued, without interruption, for well over a decade.

129.    As a direct and proximate result of defendant Suffolk's violation of plaintiff's rights to due process under the Fifth and Fourteenth Amendments to the United States Constitution, the plaintiff has suffered damages including, but not limited to, the loss of its valuable personal property, and the loss of possession, use, and ability to sell its property in the conduct of its business.

130.    The defendant has failed and refused to return the plaintiff's personal property, although the plaintiff has duly demanded the return of same.

131.    As a result of such deprivations, the plaintiff has sustained damages in excess of $100,000, and the plaintiff is entitled to seek and obtain relief against the defendant pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988 et seq.

132.    As a result of the foregoing, the plaintiff is entitled to obtain and be awarded relief against the defendant under 42 U.S.C. §1983, including but not limited to (a) an accounting from the defendant of all personal property which the defendant's employees have seized from the plaintiff, as reflected in the records of the SCPD, (b) a return of all property seized from the plaintiff

by the defendant and/or its agents, (c) an award of compensatory damages against the defendant for any property which is not returned, damages for the loss of use and/or opportunity to sell their property, any damages sustained by their businesses as a result, and a monetary judgment for same, (d) a declaratory judgment, adjudging that the defendant's policies, practices, and procedures in this regard are unconstitutional, and injunctive relief regarding same, together with (e) an award for statutory attorneys' fees, costs, and interests pursuant to 42 U.S.C. §1988 et seq.

## COUNT II

**42 U.S.C. §1983 Action for Deprivation of Plaintiff's Rights
Under U.S. CONST. Fourth and Fourteenth Amendments
Unconstitutional Searches and Seizures**

133.    The plaintiff repeats and reiterates the allegations set forth within paragraphs "1" through "132" hereinabove, with the same force and effect as if fully set forth at length herein.

134.    At all times described herein, the plaintiff was vested with a constitutional right to be free of unreasonable searches and seizures, as is guaranteed to the plaintiff under the Fourth and Fourteenth Amendments to the United States Constitution.

135.    Under the policies, practices, and procedures of the SCPD, the SCPD's detectives are and have been, permitted to violate the plaintiff's U.S. Constitutional rights to be protected against unreasonable searches and seizures, both (a) at the time of each warrantless search and each warrantless seizure, and (b) when the predicates for such seizures terminated, and the defendant failed and/or refused to return the seized records and merchandise to the plaintiff.

A.    <u>Initial Unconstitutional Searches and Seizures</u>

136.    As described herein, under the policies, practices, and procedures of the SCPD, detectives of the SCPD made warrantless searches and seizures of both (a) the plaintiff's personal business records as well as (b) the merchandise described in those records.

137.    By carrying out unlimited and unrestricted searches of the plaintiff's business records without warrants and, in most cases, lacking any semblance of probable cause, the defendant's detectives violated the plaintiff's right to be free from *unreasonable searches* as guaranteed to the plaintiff under the Fourth and Fourteenth Amendments.

138.    By carrying out unlimited and unrestricted seizures of the plaintiff's business records and plaintiff's property without warrants and, in most cases, lacking any semblance of probable cause, the defendant's detectives violated the plaintiff's right to be free from *unreasonable seizures* as guaranteed to the plaintiff under the Fourth and Fourteenth Amendments.

139.    Under such policies, practices, and procedures of the SCPD, detectives within the PRS were "trained" by the highest ranking officer in that unit and their supervisors that "warrants were not required" for such searches and seizures. *See* Exhibit "D," at page 28, line 23 through page 31, line 9.

140.    Under such policies, practices, and procedures of the SCPD, no minimum criteria were required to be met before a detective could make such a warrantless search or seizure. *See* Exhibit "D," at page 33, lines 14-21.

141.    Nor were the detectives required to have probable cause to believe that an item to be seized was stolen property. Id.

142.    Nor were the detectives required to believe the items were necessary as evidence in a criminal proceeding. *See* Exhibit "D," at page 41, lines 24-25.

B.    Unconstitutional Seizures Where The Underlying Basis For Such Seizure Terminated and the Defendant Failed or <u>Refused to Return the Seized Property to The Plaintiff</u>

143.    As is clearly established law, when a municipal police department seizes personal property based upon the belief that it is stolen property and thereafter learns that it is not, in fact, stolen property, the constraints of the Fourth and Fourteenth Amendments mandate that the seizing authority either: (a) immediately make application to a Court to establish a new predicate under which it can claim the right to maintain continuing possession of the property, or (b) immediately return the property to the person or entity from whom they had seized it.

144.    In case after case after case, (a) detectives of the SCPD would seize what they initially believed to be stolen property, (b) they ultimately learned that the items seized were not the stolen property they were looking for, and (c) upon learning of same, the detectives did not return the seized property back to the store from whom they seized it, but instead caused or permitted the property to be sold by the SCPD at public action, had it sent to the *Covanta* incinerator for destruction, or simply caused the SCPD to retain it indefinitely.

145.    Moreover, the defendant's agents knew, beyond any reasonable doubt, that they had no basis for depriving the store owners of their property, much less the right to sell it, but they viewed Precious Metals Dealers with contempt and knowingly and intentionally withheld their property, and/or caused it to be disposed of.

146.     Upon information and belief, in some cases, they sent gold coins or other items of high value to the *Covanta* incinerator, simply because they did not want to return it to the store owner from whom they seized it.

147.     On each and every occasion when the defendant's agents learned that seized properties had not been stolen, the SCPD's failure to immediately return the property to the store owners from whom they seized such properties, including the plaintiff, then constituted an unreasonable seizure, which violated the plaintiff's rights under the Fourth and Fourteenth Amendments.

148.     Given the foregoing, the plaintiff is entitled to a declaratory judgment, declaring, as unconstitutional, the defendant's policies, practices, and procedures which:

(a)     authorize and/or vest SCPD detectives with unlimited and unsupervised power to search all of the plaintiff's business records, without warrants or probable cause, but as a "fishing expedition" seeking to find any records or transactions which they deem to be "suspicious";

(b)     authorize and/or vest SCPD detectives with unlimited and unsupervised power to make warrantless seizures based upon (i) nothing more than a request to make such seizure from any police officer from any police department on Long Island or (b) arbitrarily and/or at their own initiative, including but not limited to cases within they seized items simply because the seller had a prior criminal record, or the item was engraved,

(c)     permit the SCPD to retain continuing possession of the seized property under circumstances where the SCPD knows that the predicate for the initial seizure no longer

exists, such as cases within which the SCPD seized property that it believed to constitute stolen property but then learns that the property it seized was not, in fact, stolen property.

### COUNT III

**42 U.S.C. §1983 Action for Deprivation of Plaintiff's Rights**
**Under U.S. CONST. Fourth and Fourteenth Amendments**
*As Written* **and** *As Applied* **Constitutional Challenges**

149.    The plaintiff repeats and reiterates the allegations set forth within paragraphs "1" through "148" hereinabove, with the same force and effect as if fully set forth at length herein.

150.    The Fourth Amendment to the United States Constitution guarantees the right of the people to be free from unreasonable searches and seizures.

151.    In defiance of that constitutional guarantee, the defendant County of Suffolk has subjected the plaintiff to the precise types of unreasonable searches and seizures that the Fourth and Fourteenth Amendments were intended to protect against, through the defendant's enactment and application of local laws and procedural rules that purport to empower its agents to carry out same.

152.    Both as written and as have been applied by the defendant for more than a decade, Articles I and IV of Chapter 563 of the Suffolk County Code and Suffolk County Rules and Procedures Chapter 20, Section 3 (Exhibits "C" and "Y" annexed hereto), have been used as the purported basis of unlimited authority being vested in detectives of the SCPD to make warrantless searches of the records of Precious Metals Dealers, including the plaintiff, and to make warrantless seizures of property belonging to Precious Metals Dealers, including the plaintiff.

33

153.    The plaintiff asserts that both Chapter 563 of the Suffolk County Code and Suffolk County Rules and Procedures Chapter 20, Section 3 are unconstitutional, both *as written*, and *as applied* to the plaintiff herein.

A.    SCC Article IV Is Unconstitutional on its Face
Because it Lacks Any Substitute for a Warrant

154.    SCC Article IV is unconstitutional on its face because it creates an inspection scheme that empowers employees of the SCPD to inspect the plaintiff's records and premises and enables them to make warrantless seizures of personal property while simultaneously failing to create any substitute for a warrant, or in any way limiting the scope of the inspections it authorizes or limits what can be seized, or requires a constitutionally permissible basis for any such search or seizure.

155.    It is clearly established law that, to comply with constraints of the Fourth Amendment, any local municipal law that authorizes the inspection of Precious Metals Dealers' records must explicitly include an adequate substitute for a warrant, which both: (a) expressly limits the discretion of those who can conduct those inspections, and (b) limits the scope of the inspections which it authorizes. *See, e.g*., Marshall v. Barlow's, 98 S. Ct. 1816 (1978); Gem Fin. Serv. v. City of New York, 298 F. Supp.3d 464 (2018); Liberty Coins LLC v. Goodman, 880 F.3d 274 (6th Cir. 2018).

156.    Significantly, the very purpose for which such requirements are constitutionally mandated is to prevent the precise types of abuses that the plaintiff herein has suffered at the hands of the defendant and its employees.

157.    A simple review of SCC Article IV reflects that it does not meet either of these requirements. Section §563-41 of Article IV requires dealers to collect an exhaustive list of

information and to maintain the same, and Section §563-42 vests employees of the SCPD with unlimited discretion to inspect those records (during regular business hours) for any reason whatsoever, or for absolutely no reason at all.

158.    This defect renders Article IV unconstitutional *on its face,* and given the manner in which it has been used to deprive the plaintiff of its property without due process as detailed herein, Article IV is contemporaneously unconstitutional *as it has been applied* to the plaintiff herein above.

159.    As detailed herein, the plaintiff has been subjected to unlawful searches and seizures by employees of the SCPD acting under the authority of that code provision while completely unrestrained due to the void of any limiting provision of Article IV, which could have limited the scope of such searches and seizures, and prevented the egregious constitutional injuries sustained by the plaintiff herein as a result.

160.    In the alternative, Article IV is unconstitutional as it has been applied against the plaintiff herein, wherein it purports to vest SCPD detectives with unlimited and unrestrained power to make both warrantless searches of the plaintiff's personal business records and warrantless seizures of both those records, and valuable merchandise which belongs to the plaintiff.

B.    Suffolk County Police Department Rules and Procedures Chapter 20 Section 3 is Unconstitutional on its Face Because it Contains no Procedure By Which Person From Whom Employees of the Police Department Seize Personal Property May Seek to Reclaim Same

161.    It is clearly established law that when police department employees seize personal property, the constraints of due process require that at the time of seizure, the government must (a) have in place a procedure through which that person may seek to reclaim or recover the property

being seized from them by the police and (b) the employee of the police department seizing such property must give them written notice of what that procedure is, at the time of seizure. *See, e.g.,* Alexandre v. Cortez, 140 F. 3d 406 (2d Cir. 1998); Butler v. Castro, 896 F. 2d 698 (2d Cir. 1990), and McClendon v. Rosetti, 460 F. 2d 111 (2d Cir. 1972).

162.    Each time detectives of the SCPD seized property from the plaintiff, they gave them the receipts, but the detectives did not give the plaintiff any written notice of the procedure by which the plaintiff was, or is, able to seek to reclaim its property.

163.    Nor could they have because neither the SCPD nor the defendant County has any such procedure.

164.    Chapter 20 Section 3 (Exhibit "Y") represents the Suffolk County Police Department's codified procedure, which provides for managing, recording, and disposing of personal property (other than automobiles), which is taken into the possession of the police department by the department's employees.

165.    A simple review of the department's procedure reveals that it is constitutionally defective on its face for three (3) reasons.

166.    First, while it encompasses a written procedure for taking into custody property seized by its employees as potential evidence or stolen property, it is entirely void of any provision, rule, regulation, or procedure that requires the Police Department to release or return any such seized property to the person from whom it has been seized when the police department no longer possesses any legal basis to retain continuing possession of same.

36

167.    Alternatively stated, there is absolutely nothing that requires the police department to release the property once the related criminal proceeding has terminated, a determination has been made that no such proceeding is ever to be filed, and the property is no longer needed as evidence.

168.    Second, while the SCPD's written procedure provides for taking seized property into custody, it contains absolutely no procedure through which the persons from whom the property has been seized, can seek to reclaim same.

169.    Third, and in a similar vein, to the extent that *a third party* claims to be *"the true owner"* of property that the SCPD has seized, the SCPD routinely releases such property to those claimants without affording the persons from whom the property was seized with notice, or any opportunity to object to the release of their property to such third persons because Section 3 of Chapter 20 of the SCPD Rules and Procedures does not include any such procedure or notice requirements.

170.    Under clearly established law, these defects render Chapter 20, Section 3 constitutionally defective on its face.

171.    As described herein, each and every time the defendant's employees seized an item of personal property from the plaintiff herein under the authority of SCPD Chapter 20, Section 3, they deprived the plaintiff of its rights to due process under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, as a matter of law.

172.    Accordingly, Section 3 of Chapter 20 of the SCPD Rules and Procedures is contemporaneously unconstitutional as they have been applied against the plaintiffs herein.

## PRAYER FOR RELIEF

**WHEREFORE,** the plaintiff prays for relief and requests that the Court render judgment as follows:

### COUNT I

**42 U.S.C. §1983 Action for Deprivation of Plaintiff's Rights
Under U.S. CONST. Fifth and Fourteenth Amendments
Procedural Due Process**

The plaintiff prays for and requests the following relief under COUNT I:

(a)     an accounting from the defendant to the plaintiff of all property which the defendant's agents have seized from the plaintiff, and an Order directing the defendant to return all property it seized from the plaintiff, and

(b)     an award of compensatory damages against the defendant for any property that is not returned, damages for the loss of use and/or opportunity for the plaintiff to sell its property, any damages sustained by their businesses as a result, and a monetary judgment for same, including interest at the legal rate of 9% per annum, and

(c)     a declaratory judgment, adjudging that the defendant's policies, practices, and procedures in this regard are unconstitutional, and injunctive relief permanently enjoining the defendant from continuing to apply such practices, policies, and procedures, and

(d)     injunctive relief, in the form of an Order, permanently enjoining the defendant from continuing to make warrantless searches and seizures of the plaintiff's records and property,

(e)     together with an award for statutory attorneys' fees, costs, and interests pursuant to 42 U.S.C. §1988 et seq. and

(f)     such other and further relief as the Court may deem appropriate.

## COUNT II

### 42 U.S.C. §1983 Action for Deprivation of Plaintiff's Rights
### Under U.S. CONST. Fourth and Fourteenth Amendments
### Unconstitutional Searches and Seizures

The plaintiff prays for and requests the following relief under COUNT II:

(a)     a declaratory judgment, adjudging that the defendant's policies, practices, and procedures in this regard are unconstitutional, and injunctive relief permanently enjoining the defendant from continuing to apply such practices, policies, and procedures, and

(b)     injunctive relief, in the form of an Order, permanently enjoining the defendant from continuing to make warrantless searches and seizures of the plaintiff's records and property,

(c)     together with an award for statutory attorneys' fees, costs, and interests pursuant to 42 U.S.C. §1988 et seq. and

(d)     such other and further relief as the Court may deem appropriate.


## COUNT III

### 42 U.S.C. §1983 Action for Deprivation of Plaintiff's Rights
### Under U.S. CONST. Fourth and Fourteenth Amendments
### *As Written* and *As Applied* Constitutional Challenges

The plaintiff prays for and requests the following relief under COUNT III:

(a)     A declaratory judgment, adjudging and declaring Suffolk County Code Chapter 563 Articles I and IV, and Suffolk County Rules and Procedures Chapter 20 Section 3 unconstitutional, void, and unenforceable as against the plaintiff herein,

(b)     affirmative injunctive relief, in the form of an Order permanently enjoining the defendant, its agents, and employees from applying Suffolk County Code Chapter 563 Articles I and IV and Suffolk County Rules and Procedures Chapter 20 Section 3 to, or against, the plaintiff herein,

39

(b)     injunctive relief, in the form of an Order, permanently enjoining the defendant from
continuing to make warrantless searches and seizures of the plaintiff's records
and property,

(c)     together with an award for statutory attorneys' fees, costs, and interests pursuant to
42 U.S.C. §1988 et seq. and

(d)     such other and further relief as the Court may deem appropriate.


Dated: Merrick, New York
       September 27, 2023
                                    Yours etc.,

                                    Campanelli & Associates, P.C.


                                    By: _____/s/_ Andrew J. Campanelli___
                                          Andrew J. Campanelli
                                          *Attorneys for Plaintiffs*
                                          1757 Merrick Avenue, Suite 204
                                          Merrick, New York 11566
                                          (516) 746-1600